Larry L. EPPS et al., Plaintiffs,

v.

Mark A. LEVINE et al., Defendants.

Civ. A. Nos. 73–525–M, 73–341–M.

United States District Court, D. Maryland.

July 11, 1978.

Richard L. North, Baltimore, Md., for plaintiffs.

Henry J. Frankel, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

The plaintiffs, Epps, Benvenuti, and the class they are certified to represent, are pretrial detainees who are awaiting trial in Maryland courts and who have been or may be transferred as pretrial detainees from a County or Baltimore City Jail to an institution of the Maryland Division of Correction. Plaintiffs allege that the transfers are effected pursuant to *Md.Ann.Code* art. 27, § 690(f) (1976 Repl.Vol.).[1] *See* Class Certification Order, Paper 10; Statement of Material Facts As To Which There Is No Genuine Dispute, Paper 29 [hereinafter Facts].

The defendants are the Commissioner of the Maryland Division of Correction, the Wardens of the Baltimore City and County Jails [hereinafter jail wardens], and three state trial court judges. A motion to certi-

---

1. Since 1972–73, twenty-six pretrial detainees have been transferred from city and county jails to the Division of Correction, and all pretrial detainees transferred to the custody of the Division were transferred to the Maryland Penitentiary. Facts ¶¶ 42, 23–41. Four persons were transferred to provide specialized treatment, four to provide protection to them, and nineteen to provide greater security control than available at the jail. Whether these persons were assigned to the penitentiary hospital, the general population, segregation, or isolation is not known. (For one person, two reasons for transfer were given.) Facts ¶¶ 23–41. Defendant represents that at present ten pretrial detainees are in the custody of the Division of Correction.

fy respectively the defendant wardens and judges as representatives of all Maryland jail wardens and all state trial court judges has been filed by the plaintiffs and granted without objection.

Pending before the court now are the plaintiffs' motion for summary judgment and attached plaintiffs' exhibits (Paper 30), and defendants' cross motion (Paper 33), and an agreed statement of Facts (Paper 29). The plaintiffs challenge under. 42 U.S.C. § 1983 the defendants' actions on several grounds: (1) that the defendants' procedures for transferring a pretrial detainee from the custody of city and county jail wardens to the custody of the Division of Correction are inadequate and deny due process when measured against the standards of the Fourteenth Amendment; (2) that § 690(f) provides no state statutory authority or standards for the transfer of pretrial detainees from the custody of jail wardens to the custody of the Maryland State Division of Correction; and (3) that, irrespective of the procedural safeguards available in accomplishing the transfer, the confinement of pretrial detainees at the Maryland Penitentiary (one of the penal institutions maintained by the Division of Correction) imposes a greater restriction on the liberty interests of the presumably innocent pretrial detainees than is permitted by the Fourteenth Amendment. The plaintiffs request only declaratory and injunctive relief.

## I. DUE PROCESS

■ The first step in analyzing the plaintiffs' due process claim is to determine whether they possess a liberty interest requiring procedural protection, and the second is to determine whether the procedures available are adequate. *See, e. g., Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49

L.Ed.2d 451 (1976); *Montayne v. Haymes,* 427 U.S. 226, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

### A. Liberty Interest

■ This court will first examine the basis in state law for the alleged liberty interest of a pretrial detainee in his remaining in the custody of a local jail warden to determine, in fact, whether any such liberty interest exists. No such liberty interest exists directly under Federal law although, as explicated at greater length in Part III hereof, a pretrial detainee may not be treated as fungible with a convicted criminal. *Cf. Meachum v. Fano, supra* (convicted criminal defendants).

■ Determination of the existence and parameters of any liberty interest alleged to exist in the present context requires examination of the following: Maryland Rules of Procedure 720, 721, 723 (1977 Supp.) [hereinafter M.R.P.]; Maryland District Rules of Procedure 720, 721, 723 (1977 Supp.) [hereinafter M.D.R.P.]; *Md.Ann. Code* art. 27, §§ 617–619, 690 (1976 Repl. Vol.).

■ Upon his arrest, a person accused of a crime in Maryland is promptly brought before a judicial officer for an initial appearance during which the judicial officer advises the accused of the charges and his right to counsel, determines whether probable cause for any warrantless arrest exists, and determines the accused's eligibility for pretrial release. M.D.R.P. 723. *Cf.* M.R.P. 723. As soon as possible the judicial officer is required to file a report of the initial appearance, the required charging documents, and all papers with Maryland District Court or to direct that the papers be forwarded to the Maryland Circuit Court, as the case may be, that has jurisdiction over the criminal charge made against the accused. *See* M.D.R.P. 723(d); M.R.P.

720(g). If the judicial officer initially, or the state court judge on review of the initial decision of the judicial officer, determines that pretrial release is not appropriate in a particular case or if an accused's inability to satisfy the conditions found necessary to assure his future appearances, and precedent to his pretrial release, results in his continued custody, the state court is required to set forth in writing or on the record the reasons for requiring the continued detention. M.D.R.P. 721(f). If the accused is to remain in custody, the court must enter a writ of commitment or order placing the accused in the custody of the county sheriff or jail warden.[2] *See Md. Ann.Code* art. 27, § 617.[3] The jail warden is then responsible for the safekeeping, care, and feeding of persons committed to his custody "until they are discharged, released or withdrawn from jail by the sheriff, or under court order, or other authori-

ty." *Md.Ann.Code* art. 87, §§ 48, 45 (1969 Repl.Vol. and 1977 Cum.Supp.). Furthermore, state law prohibits the transfer of a person committed for any criminal matter from the custody of one officer to the custody of another officer "unless it be by habeas corpus or by other legal writ" with some exceptions not relevant here. *Md.Ann.Code* art. 27, § 618 (1976 Repl.Vol.).[4]

▪ The preceding state authorities establish an accused's legal right to have the state court with jurisdiction over the criminal charge against him decide whether and on what conditions the accused should be released prior to trial and to whose custody the accused will be committed if pretrial release is not available.[5] However, said authorities do not expressly or implicitly limit the state court's power or discretion to place an accused pretrial detainee in the

---

**2.** Under Maryland common law, traditionally custody of an accused was given to the county sheriff. *See Baumgarten v. Maryland*, 21 Md. App. 251, 319 A.2d 592 (1974). This common law rule is, however, subject to legislative modification; and the Maryland General Assembly, home rule counties, and the City of Baltimore may transfer control of the county jail from the sheriff to a county jail warden. *See Beasley v. Ridout*, 94 Md. 641, 52 A. 61 (1902); *Md.Ann. Code* art. 25A, § 5(C); *id.* art. 25B, § 13 (1973 Repl.Vol.); *Md.Const.* arts. XI, XI-A, XI–F (1977 Repl.Vol.). Although only the Baltimore City and Baltimore County jail wardens were named in this case, the legal responsibilities of all sheriffs and wardens are the same for purposes of this case, as will be seen; and this court's order certifying a defendant class obviates the need for additional joinder. In this case, the term "jail warden" will encompass all city and county jail wardens or sheriffs exercising custody of pretrial detainees. For a discussion of the longstanding confusion in this area and a plea for a general legislative clarification, see Note, *The Maryland Sheriff v. Modern and Efficient Administrators of Justice*, 2 U.Balt.L. Rev. 282 (1973).

**3.** That section provides in part:
"§ 617. *Person detained entitled to copy of warrant of detainer or commitment, penalty for failure to deliver.*
"(a) Any person committed or detained, or any person on his behalf may demand a true copy of the warrant of commitment or detainer.
"(b) Any officer or other person who shall neglect or refuse to deliver a true copy of the

warrant or detainer, if there is one, within six hours after the copy has been demanded, shall forfeit $500 to the person detained."

**4.** In full, that section provides:
"§ 618. *Change of custody from one officer to another made only by habeas corpus; exception.*
"No citizen of this State committed to the custody of an officer for any criminal matter *shall be removed from thence into the custody* of another officer, unless it be by habeas corpus or by other legal writ, except where the prisoner shall be delivered to a constable or other inferior officer, to be carried to some common jail, or shall be removed from one place to another within the said county or an adjoining county, in order to discharge or trial in due course of law; or in case of sudden fire or infection, or other necessity; or where the prisoner shall be charged by affidavit or other lawful evidence with treason, felony or other crime alleged to be done in any other of the United States of America or territories thereof—in which last case he shall, on the demand of the executive authority of the state, district or territory from which he fled, be immediately delivered up."
*See also id.* § 619, relating to transfers of custody between county jail wardens where the accused seeks removal of his case from one county to another.

**5.** The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

custody of the most appropriate person. Indeed, in the context of a pretrial release order, Maryland law expressly grants the court power to commit the accused to the custody of persons or organizations, e. g., a halfway house. *See* M.D.R.P. 721(c)(1); M.R.P. 721(b)(1). While one traditional responsibility of the city or county sheriff is the care and custody of accused persons detained prior to trial, a responsibility which in some subdivisions has been legislatively shifted to jail wardens, the foregoing state statutes and rules do not mandate that a pretrial detainee necessarily be in the custody of the local sheriff or jail warden.

■ In this case the plaintiff pretrial detainees urge that *Md.Ann.Code* art. 27, § 690(c) creates a legitimate and reasonable expectation that a pretrial detainee may, as a matter of state law, not be committed to the custody of the Division of Correction. Subsection 690(c) provides:

"(c) *Minimum period of sentence.*—No sentence by any judge to the jurisdiction of the [Division] may be for less than three months, any provisions of this article or any other law to the contrary notwithstanding."

This subsection, however, addresses only the "sentence" imposed by a state court. As the remainder of section 690 and the rules of procedure, M.R.P. 771–778, M.D.R.P. 771–778, disclose, "sentence" means the fine, probation, or incarceration imposed to punish, rehabilitate, or deter a convicted criminal defendant. 58 Op.M.D. Atty.Gen. 168 (1973); *Webster Third New International Dictionary* 2068 (1966) ("sentence"). Subsection 690(c) does not apply to an accused pretrial detainee.

■ The plaintiff pretrial detainees also urge that *Md.Ann.Code* art. 27, § 690(f) gives to them a legal right not to be transferred from the custody of a jail warden to the custody of the Division of Correction absent a factual finding of a need for spe-

cialized treatment or for maximum security detention, not available at the jail. From this premise the plaintiffs then attack the adequacy of the statutory standards and the absence of procedural safeguards. Subsection 690(f) provides:

"(f) *Transfer of inmates or pretrial defendants from local facilities under certain circumstances.*—The Commissioner of Correctional Services may accept transfer of inmates or pretrial defendants from a county or Baltimore City detention facility if such person to be transferred requires specialized treatment of behavior or medical problems, or requires maximum security detention, and the county or Baltimore City facility is not equipped to properly provide the necessary treatment or detention."

This section does not say that "pretrial defendants may be transferred from a county jail to the Division only if the Commissioner, the jail warden, a state judge, or some other official finds as a fact after notice and hearing that a pretrial defendant needs specialized treatment or maximum security detention." If such had been the legislative purpose, different words than those in § 690(f) would have been used.[6] Rather than trying to create legal rights in pretrial detainees, the Maryland legislature in § 690 defined the responsibilities of the Division of Correction; authorized it to hold, assign, and transfer prisoners among state institutions as it deems necessary; and eased the administrative burden by having state prisoners assigned to one authority. *See* ch. 695, 1967 Md.Laws 1500 (Preamble); *Mullins v. Maryland*, 12 Md.App. 222, 224, 278 A.2d 85 (1971); *Spillers v. Maryland*, 10 Md.App. 643, 647–648, 272 A.2d 49 (1971). Subsection 690(f) adds to the responsibilities of the Commissioner of Correction the task of safekeeping and care of pretrial detainees needing specialized treatment or maxi-

---

**6.** For examples of language used by the Maryland legislature to give rights to pretrial detainees and inmates, *see Md.Ann.Code* art. 27, § 616½(b) (Bail in District Court), § 616D (Interstate Agreement on Detainees), § 616S (Intrastate Detainers), § 617 (copy of warrant of commitment), quoted *supra*, § 618 (change of custody), § 619 (transfer of custody in removed cases), § 638C(a) (credit against sentence for time spent in pretrial custody), § 700 (good time and other credits).

mum security detention, a responsibility not otherwise imposed on the Division. *See Md.Ann.Code* art. 27, §§ 667–704. Subsection 690(f) does not give the pretrial detainee any more of a right to either demand or contest transfer to the Division than the pretrial detainee would have without subsection 690(f).

■ Accordingly, this court concludes that under Maryland law a person accused of a crime has (1) a right to have the state court with jurisdiction over the criminal charge against him determine whether and on what conditions he should be released prior to trial and to whose custody he will be committed if pretrial release is not available and (2) a right to remain in the custody of the designated officer until further court order. This is the extent of the liberty interest (pertinent to this case) requiring procedural safeguards.

### B. Procedural Safeguards

The plaintiffs' attack on the adequacy of the procedures safeguarding the liberty interest involved here must be examined separately, on the one hand, for the defendant judges of the state courts with jurisdiction over the criminal charges against the accused pretrial detainees and, on the other hand, for the defendant jail wardens and Commissioner of Correction.

### (1) The Judges of the State Criminal Courts

■ The plaintiffs' request that this court instruct the judges of the state courts with jurisdiction over the criminal charges against the accused pretrial detainee in the procedures due to a defendant in a pending criminal case.[7] Such a request for relief requires this court first to consider principles of federalism and comity. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (State Criminal Syndicalism Act); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (public nuisance civil proceeding resembling

criminal proceeding); *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (state criminal proceeding initiated after federal action); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (state civil contempt proceeding); *A.C.L.U. v. Bozardt,* 539 F.2d 340 (4th Cir. 1976) (attorney disciplinary proceedings).

In *A.C.L.U. v. Bozardt, supra,* the Fourth Circuit affirmed dismissal of a challenge to ongoing attorney disciplinary proceedings and explained:

> "the *Younger* bar to federal intervention involves different considerations; it is recognized that when both state and federal questions are properly presented before a state court in pending state criminal proceedings, *see Younger, supra,* or in certain pending state civil proceedings, *see Huffman v. Pursue, Ltd. . . . .,* principles of comity and federalism require that the federal courts not be permitted to interfere in the ongoing state proceedings. The underlying consideration of the *Younger* rule is recognition that any federal claim properly asserted in and rejected by the state court is subject to review by the United States Supreme Court . . . . Since the federal claim will eventually be subject to consideration by the Supreme Court, abstention appears to have no application to cases in which *Younger* bars relief. In this regard, the Supreme Court has stated that '[u]nlike those situations where a federal court merely abstains from decisions on federal questions until the resolution of underlying or related state law issues . . . *Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts.' "

539 F.2d at 342 (citations omitted). And one commentator has summarized factors bearing on application of *Younger's* principles of federalism and comity as follows:

---

7. Under Maryland criminal procedure, a person who is arrested either has already had a criminal charge made against him, or he will have a charge filed against him promptly after the arrest, or he will be released. *See* M.D.R.P. 723(a), 710–713, 720; M.R.P. 723, 710–713, 720.

"Factors pertinent to this balance include the state interest in administration of state laws, the pendency of a state proceeding furnishing an adequate legal remedy, the possibility that federal intervention would reflect negatively on state court capabilities, considerations of judicial economy, the duty of a federal court to vindicate individual constitutional rights, the effect of a delay in relief upon the individual rights at stake, the particular federal right imperiled, and the gravity of the threat to it."

Note, *Federal Equitable Restraint,* 35 Md.L. Rev. 483, 504 (1976).

■■ *Younger* and its progeny counsel strongly that this court should not interfere in the ongoing state criminal proceeding and should dismiss this complaint against the defendant state judges. The state has the strongest possible interest in the administration of its criminal statutes, in its ability to assure a criminal defendant's appearance at trial, and in its ability to maintain order, safety, and health in the institutions in which accused persons are detained, if necessary, prior to trial. The plaintiff pretrial detainees here are defendants in pending state criminal cases where the state court itself is required to name the custodian, where the state rules of procedure require weekly reports to the court on pretrial detainees and allow any party to move to revoke or amend the pretrial release condition, M.D.R.P. 721(g), (h), M.R.P. 721(f), (g), and where all pretrial detainees have the right to representation by counsel. Intervention of a federal court in this context would reflect a serious criticism of the ability of the state court system to deal fairly with persons held in custody under its orders, and it could involve this federal court in reviewing each state court order to transfer custody of a pretrial detainee from a jail warden to the Division of Correction. Finally, the plaintiff pretrial detainees' de-

mand here for prior written notice, counsel, an evidentiary hearing, and a statement of reasons, if granted, would place this court in the position of ordering more procedural safeguards for the state criminal courts' decision to transfer custody of a pretrial detainee from one official to another official than the procedures the Supreme Court found necessary for the finding of probable cause that supports the initial restriction on the accused's liberty. *See Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).[8]

For these reasons the complaint against the state judges will be dismissed.

### (2) *Custodial Officials*

The defendant jail wardens and the Commissioner of Correction hold the accused pretrial detainers subject to the orders of the state court with jurisdiction over the accused and the criminal charges against him. No transfer of custody may occur without a state court order.[9] See Part I, A, *supra.*

■■ The agreed Facts disclose that some of the twenty-six transfers since 1972–73 of pretrial detainees from the custody of a jail warden to the custody of the Division of Correction were made without a court order. Facts 23–41. However, defendants' counsel has represented at the hearing that at the present time the defendants transfer custody only upon the issuance of a court order. If the defendants establish by affidavit that their present practice does require a court order for transfer of custody and that implicitly each and every pretrial detainee presently in the custody of the Division of Correction is held pursuant to a court order, then this complaint for injunctive and declaratory relief may well be moot because an actual controversy must exist at all stages of a

---

8. No *Younger* problem arose in *Gerstein v. Pugh,* where persons were detained on a decision of the State prosecutor to file an information without court action, because no state forum was available in which the pretrial detainee had an opportunity to present his claim.

See *Juidice v. Vail,* 430 U.S. at 336–337, 97 S.Ct. 1211.

9. No opinion is expressed on the exigent circumstances in which an order might be signed after a transfer had occurred.

case. *See, e. g., Diffenderfer v. Central Baptist Church,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). (No damages are demanded.)

An opportunity will be provided to the parties to develop these facts.

## II. STATE LAW

■ The plaintiffs' argument that *Md. Ann.Code* art. 27, § 690(f) provides no state statutory authority or standards for the transfer of pretrial detainees from the custody of jail wardens to the custody of the Division of Correction misapprehends the significance of subsection 690(f) as explained above. This subsection merely defines one responsibility of the Division of Correction. The power and discretion to detain and to transfer custody of persons accused of crimes rests with the state court with jurisdiction over the accused and the criminal charges against him. *See* M.D. R.P. 720, 721; M.R.P. 720, 721. *See also Gerstein v. Pugh, supra.*

## III. CONFINEMENT AND ITS CONDITIONS

The plaintiffs' third and final claim is that the confinement of pretrial detainees at the Maryland Penitentiary,[10] regardless of the procedural safeguards available during the transfers, imposes a greater restriction on the liberty interests of the presumably innocent pretrial detainees than is permitted by the Fourteenth Amendment.

### A. Confinement Itself at the Maryland Penitentiary.

■ The plaintiffs concede in their memorandum (Paper 30, at 9–11) and in oral argument that the state may restrict

the liberty of a person accused of a crime sufficiently to assure his appearance at trial and, if incarceration is necessary, sufficiently to maintain the order and security of the institution. *See, e. g., Collins v. Schoonfield,* 344 F.Supp. 257 (D.Md.1972). But they then ask this court, in effect, to review (or stand ready to review) each order of a state court with jurisdiction over an accused and the criminal charges against him to determine whether the specific pretrial detainee's actions warranted the great restrictions existing at the Penitentiary or, alternatively, to conclude that the restrictions existing at the Penitentiary are so severe that no circumstances or actions by a pretrial detainee found as facts by a state court could warrant confinement at the Penitentiary rather than a city or county jail.[11]

The plaintiffs' request for federal court equitable intervention in this situation is also barred by the principles of federalism and comity explained in *Younger v. Harris* and its progency. The state has a vital interest in maintaining order and security in its institutions. The state court which has jurisdiction over the accused and the charges against him and which ordered the transfer in the first place receives weekly reports on pretrial detainees and presumably decides motions, if filed, to amend commitment orders. *See* M.D.R.P. 721(g), (h); M.R.P. 721(f), (g). The very weighty interests of the pretrial detainee to prepare for trial with trial counsel, if interfered with by a transfer of custody, can be presented to the state court and protected by a retransfer, by special arrangements with the custodian, or by an adjustment in the schedule for the criminal trial—a form of relief beyond the authority of this court. The accused pretrial detainees have an opportuni-

---

**10.** Maximum security detention custody is apparently available only at the Maryland Reception, Diagnostic and Classification Center (MRDCC) and the Maryland Penitentiary, two of seven Division of Correction institutions. Fact ¶ 45; D.C.R. §§ 10–2 to 10–8 (January 2, 1974). All pretrial detainees transferred for maximum security detention have been placed in the Penitentiary Facts 23–42, apparently be-

cause of MRDCC's specialized functions. *See* D.C.R. § 10–2.

**11.** Of course, general conditions at the Maryland Penitentiary might be so bad that no one should be confined there, but this question has been presented in another case before this court. *See Nelson v. Collins,* 455 F.Supp. 727 (D.Md. May 17, 1978).

ty to present this and any other federal claims in the pending state court proceeding, and no more is required to invoke *Younger* abstention. *Juidice v. Vail*, 430 U.S. at 336–337, 97 S.Ct. 1211.

Accordingly, the complaint will be dismissed in so far as it asks this court in this case to enjoin the state court judges from ordering a pretrial detainee transferred to the custody of the Division of Correction at the Maryland Penitentiary.

B.  *Conditions for Pretrial Detainees at the Maryland Penitentiary.*

■ This court's decision to abstain from interfering with the state criminal court's order to transfer a pretrial detainee from the custody of a jail warden to the custody of the Division of Correction at the Maryland Penitentiary does not mean that the conditions of confinement at the Maryland Penitentiary in which the Division of Correction holds pretrial detainees may not be challenged. *See Collins v. Schoonfield*, 344 F.Supp. 257 (D.Md.1972) (Kaufman, J.) (conditions for pretrial detainees at the Baltimore City Jail); *Duvall v. Lee*, Civil No. K–76–1255 (D.Md. partial consent decree November 23, 1977) (overcrowding Baltimore City Jail). *Cf. Nelson v. Collins*, 455 F.Supp. 727 (D.Md.1978) (Blair, J.) (overcrowding at Maryland Penitentiary, Div. of Correction); *Johnson v. Levine*, 450 F.Supp. 648 (D.Md.1978) (Harvey J.) (overcrowding at Maryland House of Correction, Division of Correction).

At this time, neither the agreed Facts (Paper 29), nor the 5 year old affidavit of Mr. Benvenuti (PX F, Paper 30), nor any Division of Correction Regulation presented to this court describe the present conditions in which pretrial detainees are held at Maryland Penitentiary or, for comparison purposes, at city or county jails from which the pretrial detainees are transferred. Therefore, this court cannot now decide issues which may exist in this area. Moreover, in view of the extensive discussion in *Collins v. Schoonfield, supra*, on the conditions of confinement of pretrial detainees, it is possible that when counsel focus on the specific conditions for pretrial detainees at the Maryland Penitentiary, rather than on the larger issue discussed in Part I *supra*, there will be little, if any, disagreement on the conditions appropriate to confinement of pretrial detainees at Maryland Penitentiary. For example, pretrial detainees transferred to the Division of Correction for specialized treatment (not available at the county jail) of behavioral and medical problems should generally be placed in the prison acute care hospital or the University of Maryland Hospital. *Cf. Nelson v. Collins, supra*, 455 F. Supp. at 732. Placement of these persons in punitive segregation would raise serious problems obvious to both plaintiffs and defendants. Equally obvious may be the proposition that the state criminal court's order transferring a pretrial detainee to the custody of the Division of Correction at the Maryland Penitentiary for maximum security detention not available at the county jail necessarily and purposefully imposes greater generalized restrictions on the pretrial detainee. Whether additional, administratively originated, specific restrictions on a pretrial detainee's access to visitors; to mail; to recreational activities; to showers, toilets and hygiene facilities; to commissaries; or to the myriad other aspects of daily life is justified by the state court order itself, by administrative or disciplinary proceedings held at the jail prior to transfer, or by administrative or disciplinary proceedings held at the Maryland Penitentiary, Division of Correction, after transfer is an open question which the parties shall further explore as instructed in the order entered herewith.